Allison S. Hyatt (SBN 217567)
Email: allison@medinamckelvey.com
MEDINA McKELVEY LLP
925 Highland Pointe Drive, Suite 300
Roseville, California 95678
Telephone: (916) 960-2211
Facsimile: (916) 742-5488

Attorneys for Plaintiff Ryan Lawrence
on behalf of Z.L.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Lawrence on behalf of Z.L.,<br><br>        Plaintiff,<br><br>v.<br><br>PALOS VERDES PENINSULA UNIFIED SCHOOL DISTRICT,<br><br>        Defendant. | CASE NO.: _____<br><br>**APPLICATION AND COMPLAINT FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 20 U.S.C. 1415** |

**INTRODUCTION**

1.     Plaintiff Ryan Lawrence on behalf of his daughter, Z.L. ("Plaintiff"),

files this action for attorneys' fees and costs after reaching a settlement with

Defendant Palos Verdes Peninsula Unified School District ("District") regarding

Plaintiff's claims alleged against the District under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400, *et seq.*(IDEA), in his due process complaint filed

with the California Office of Administrative Hearings (OAH), OAH Case No.

2022040586 ("Due Process Complaint").[1]  In the settlement agreement, the parties

reserved the issue of the amount of attorneys to be decided by the Court if an

agreement regarding fees could not be reached. [2]

2.     Plaintiff provided his itemized billing statement to the District

documenting his reasonable fees incurred in connection with the OAH proceeding on

September 22, 2022.  Plaintiff has attempted for more than five (5) months to

negotiate with the District regarding the amount of fees only to face delay after delay.

After five months, the District has not responded with a single counter-offer in

response to Plaintiff's request for fees, nor has the District affirmed it will NOT pay

the fees requested.  Instead, the District keeps asking for more time to consider the

request.   This delay has caused Plaintiff to incur additional fees attempting to

negotiate with the District, and, now, Plaintiff has had to incur the cost of preparing

and filing the instant Complaint and accompanying Motion for Fees and Costs

("Motion").  Plaintiff now requests that the District be ordered to pay $53,712.50 for

fees incurred in connection with the OAH proceeding as of September 22, 2022, plus

$4,042.90 for fees incurred attempting to negotiate with the District after the original

fee amount was requested, and $27,079.50 for fees expended preparing Plaintiff's

Complaint and Motion for fees in federal court, along with any future fees and costs

Plaintiff may incur if forced to continue litigating this matter in federal court.

---

[1] Attached hereto as Exhibit A.
[2] Settlement Agreement attached hereto as Exhibit B.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 20 U.S.C. § 1331.

Plaintiff files this action to recover reasonable attorneys' fees and expenses incurred

in connection with an administrative proceeding under the IDEA as the "prevailing

party" pursuant to U.S.C. § 1415(i)(3).

## THE PARTIES

4.      Plaintiff is the parent and guardian ad litem of Z.L. (hereinafter Z.L. or

"Student"), who is a student with disabilities within the meaning of the IDEA.

5.      Defendant Palos Verdes Peninsula Unified School District is a public

entity organized and existing under the laws of the State of California.  Pursuant to

the Constitution and the laws of the State of California, the District has a duty to

provide a free and appropriate public-school education (FAPE) to all children

residing within its jurisdictional boundaries.  The District is a "local educational

agency" within the meaning of 20 U.S.C. § 1401.

## STATUTORY SCHEME

6.      IDEA is the successor to the Education for All Handicapped Children

Act ("EHCA"), which was adopted in 1975 to ensure that children with disabilities

receive an appropriate public-school education.  In amending IDEA in 2004,

Congress found that when EHCA was enacted, the educational needs of literally

"millions" of children with disabilities were not being met because "they did not

receive appropriate educational services" or "were excluded entirely from the public

school system and from being educated with their peers." 20 U.S.C. § 1400(c)(2)(A)

and (B).  Congress further found that the implementation of IDEA "has been impeded

by low expectations, and an insufficient focus on applying replicable research on

proven methods of teaching and learning for children with disabilities."  20 U.S.C. §

1400(c)(3) and (4).  Congress therefore re-enacted the IDEA in order to, among other

things, "ensure that all children with disabilities have available to them a free

appropriate public education that emphasizes special education and related services

MEDINA MCKELVEY LLP

designed to meet their unique needs and prepare them for further education, employment, and independent living" and "to ensure that the rights of children with disabilities and parents of such are protected." 20 U.S.C. §1400(d)(1)(A)–(B).

7. Pursuant to 20 U.S.C. § 1415(b)(6)(A), "[a]ny party" may present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate education to such child," and have the complaint resolved in an impartial due process hearing. At all times relevant hereto, California had established an impartial due process hearing system with hearings conducted by the California Office of Administrative Hearings.

8. The parental right to recover attorneys' fees is one of the IDEA's most important procedural safeguards. Without the availability of fees, it would be impossible for most parents to obtain representation to enforce their children's rights. The IDEA thus allows a "court, in its discretion, [to] award reasonable attorneys' fees ... to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3). Congress understood that, absent a fee-shifting framework as part of the IDEA's due process procedures, many families would be unable to retain counsel to undertake special education cases, and, the IDEA would largely go unenforced. Senator Weicker explained that, without access to attorneys' fees, "the economic resources of parents become crucial to the protection of their children's rights regardless of the merits of the claim." 130 Cong. Rec. S9079 (daily ed. July 24, 1984). *See also Handicapped Children's Protection Act of 1985: Hearing Before the Subcomm. on the Handicapped of the Senate Comm. on Labor & Human Resources,* 99th Cong., 1st Sess. at 24–25 (May 16, 1985).

## STATEMENT OF FACTS

9. Z.L. was first assessed in March 2018 to determine her eligibility for special education services and was found to qualify under the eligibility category of Specific Learning Disability (SLD). At the time, Z.L. was in third grade with average intelligence based on IQ testing, but she scored in the well below average range on

4

standardized tests in the areas of basic reading, reading comprehension, reading fluency, and written expression.

10. By the time Z.L. was in 6th grade after three years of receiving special education services through the District, she was testing three grade levels behind in reading ability. In connection with Z.L.'s triennial Individualized Education Program ("IEP") assessment in March 2021, her scores on standardized tests demonstrated a <u>decline</u> with respect to her basic reading skills. Despite Z.L.'s multiple areas of need with respect to basic reading and writing skills alone, Z.L.'s March 17, 2021 IEP document reveals that she only had a total of three annual IEP goals she had been working on the previous year and she failed to meet two of those goals.

11. Three new goals were developed for Z.L. in connection with her March 17, 2021 triennial IEP. None of these goals were appropriately measurable or designed to enable Z.L. to make progress in her general education curriculum. Z.L. was missing basic reading skills that were severely inhibiting her ability to access grade-level curriculum. As a result, Z.L.'s confidence and self-esteem were suffering and Z.L. was developing coping mechanisms to mask her learning deficits instead of getting the help she so desperately needed.

12. Despite these failures and the widening gap in Z.L.'s reading ability as compared to her same-aged peers, the District continued to offer the same failed reading intervention and special education services in her March 17, 2021 IEP.

**A. Plaintiff's Attempts to Work with the District Outside of Due Process.**

13. Concerned over Student's continued lack of progress and obvious inability to read as a 7th grader, Plaintiff sought to have Student assessed by an outside dyslexia specialist in the late fall of 2021. The outside assessment report by Leah Skinner, M.Ed. Dyslexia Therapist, dated January 25, 2022 (the "Dyslexia Assessment") revealed that Student is in the *severe* range for mixed dyslexia and

presents with both a Phonological Processing Disorder as well as an Orthographic Processing Disorder.

14. After Plaintiff obtained the Dyslexia Assessment at his own cost, he requested an IEP meeting with the District to go over the report and discuss Ms. Skinner's findings with the hope of developing an IEP for Z.L. with the support of the District and Student's entire IEP team that would get her back on track and up to grade level. A series of IEP meetings were held in early 2022 at Plaintiff's request. It was Plaintiff's desire to work with the District and develop and appropriate IEP tailored to Z.L.'s unique educational needs. Ms. Skinner attended the meetings and presented her report. No one from the District questioned any of Ms. Skinner's findings or recommendations or expressed any disagreement with her report during the IEP meetings.

15. Ms. Skinner drafted a set of 10 comprehensive measurable goals designed to address Student's areas of need and detailed her recommendation for services and placement to achieve those goals. Again, there was no objection or contrary opinion expressed by anyone else on Z.L.'s IEP team. During a follow-up IEP meeting that was held on March 10, 2022, the District responded by also proposing 10 goals for Student in its March 10, 2022 offer of FAPE. Some of the goals are closely aligned with Ms. Skinner's goals. However, most of the goals proposed by the District lacked appropriate baselines, or any baselines whatsoever. Despite not having baselines for its goals or any reason to challenge Ms. Skinner's recommendations for services and the type of educational placement needed for Z.L. to achieve her recommended goals, the District once again offered the same failed reading intervention and special education services in its March 10, 2022 IEP offer of FAPE as it did the year prior. Plaintiff asked that the IEP team adopt the goals and recommendations of Ms. Skinner and consider placing Z.L. at a school that offers a fully immersive dyslexia treatment program with the hope that she could possibly get her reading level up to a place where she would have a chance to earn a high

school diploma and be successful going back to a public school placement for high school. The school-based members of Z.L.'s IEP team refused to consider Plaintiff's request and instead offered for Z.L. to continue at her same middle school with essentially the same special education services that had failed her year after year.

16. On May 3, 2022, the District provided the missing baselines it failed to provide in connection with the March 10, 2022 IEP goals it proposed and insisted on adopting over Plaintiff's objection. This was almost two months *after* the District presented its offer of FAPE at the March 10, 2022 IEP meeting. The baseline for Z.L.'s Academic Goal #1 states that Student's independent reading level "**is currently at a 1st grade level**." Z.L. is now in 8th grade. Z.L.'s assessment results reveal that she is very smart and very capable and should be reading at grade level if she would have been provided with appropriate reading intervention. Plaintiff attempted to work directly with the District to rectify the issue of Student being denied a FAPE for months to no avail. His only option for getting Z.L. the help she so desperately needed was to file his Due Process Complaint.

**B.    Issues Presented in the Due Process Complaint.**

17. On April 18, 2022, R.L. filed his Due Process Complaint. The Due Process Complaint asked the OAH to consider whether the District failed to provide Z.L. with a FAPE during the 2020/2021 and 2021/2022 school years in connection with her IEP dated March 17, 2021 by: (1) failing to develop appropriate measurable goals tailored to her specific areas of need as a student with severe dyslexia; (2) failing to provide an appropriate evidence-based Structured Literacy Program for Z.L. with the necessary frequency and duration per session for the program to be implemented with fidelity to address Z.L.'s educational needs; and, (3) failing to provide targeted evidence-based writing intervention with the necessary frequency and duration per session for the program to be implemented with fidelity to address Z.L.'s educational needs.[3]

---

[3] *See* Exhibit A.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

18.     The Complaint also asked the OAH to consider whether given Student's continued lack of progress and the widening gap in her reading ability as compared to her same-aged peers, the District failed to offer Student a FAPE in connection with her IEP dated March 10, 2022 by: (1) failing to offer an appropriate evidence-based Structured Literacy Program for Student for 45–60 minutes per day 4–5 days per week covering decoding, encoding, vocabulary, fluency, and comprehension development; (2) failing to provide targeted evidence-based writing intervention for 30–45 minutes per day, 4–5 days per week; and, (3) failing to appropriately consider and offer placement to Student in a full immersion program tailored to her unique needs as a student with dyslexia.[4]

### C.     The Custody Battle Between Plaintiff and Z.L.'s Mother.

19.     In addition to fighting with the District to obtain appropriate special education supports and services for his daughter, Plaintiff has had to navigate receiving initial support from Z.L.'s mother, Tonya Webster, as he moved forward with his efforts to get Z.L. the help she needed only to have Ms. Webster change course once the Due Process Complaint was filed with the OAH.  Ms. Webster then began actively working *against* Plaintiff and Z.L., who was pleading with her father for a different school placement so she could get help and get her reading and writing skills up to grade level.

20.     Plaintiff and Ms. Webster have shared joint legal and physical custody of Z.L. since their divorce became final in July 2020.  Plaintiff has always been very involved in Z.L.'s education.  Plaintiff and Ms. Webster have a separate family law case pending regarding their dispute over their shared custody arrangement for both Z.L. and her younger sister.  Plaintiff initiated the custody proceedings because he was concerned about both Z.L. and her sister's lack of educational progress, Z.L.'s increasing symptoms of depression and anxiety as a result, and believed his girls would benefit from more time staying with him and their stepmom because of their

---

[4] *See* Exhibit A.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

availability to help with homework and be involved daily in terms of monitoring their assignments and educational progress and communicating with teachers.

21.     Unfortunately, the custody battle between Plaintiff and Ms. Webster has been very contentious.  Plaintiff felt he was facing an uphill battle as a father.  The family law judge eventually issued an order confirming Plaintiff and Ms. Webster would continue to share joint legal and physical custody but granting Ms. Webster "tie-breaking authority" with respect to educational decisions.

**D.     The Initial Scheduling Order and Resolution Session.**

22.     On April 19, 2022, OAH filed a Scheduling Order setting a Prehearing Conference for May 27, 2022 and the Due Process Trial to start on June 7, 2022.[5] The District then filed a response to the Due Process Complaint on April 28, 2022.[6]

23.     On May 3, 2022, the Parties participated in a resolution session to discuss settlement of the matter to no avail.

**E.     The District's First Motion.**

24.     On May 20, 2022, the District filed a Motion to Continue, or in the Alternative, to Dismiss the due process hearing based on a May 10, 2022 Los Angeles Superior Court, Family Law Division, minute order by the Hon. Alison MacKenzie, Judge, granting Ms. Webster "sole legal custody with respect to all school-related activities . . . for the remainder of the 2021-2022 school year." [7] The District argued that this minute order supposedly eliminated Plaintiff's standing to proceed with his Due Process Complaint.  The minute order issued by the family law court stated:

> "The Court grants [Ms. Webster's] ex parte application to allow minor child [Z.L.] to attend PVIS health class program as follows:
>
> Commencing immediately, [Ms. Webster] shall have sole legal custody with respect to all school-related activities for minor child [Z.L.] for the remainder of the 2021-2022 school year.  [Ms. Webster] therefore will be solely responsible for making decisions regarding [Z.L.'s]

---

[5] Attached as Exhibit C.
[6] Attached as Exhibit D.
[7] Attached as Exhibit E.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

involvement in school activities, including the health class program described in the ex parte application."[8]

In the alternative, the District requested that Z.L.'s due process hearing be continued until after a July 1, 2022 custody hearing in the family law proceeding. Plaintiff was forced to prepare and file an opposition to this motion, which they did on May 25, 2022.[9]

25. On May 25, 2022, the OAH granted the request for continuance, resetting the Prehearing Conference to July 8, 2022 and the due process hearing to start July 19, 2022.

**F.    The District's Second Motion.**

26. On July 6, 2022, the District filed a second Motion to Continue, or in the Alternative, to Dismiss the due process hearing based on custody disputes being litigated in the family law proceeding,[10] causing counsel for Plaintiff to prepare a new round of opposition papers.[11]

**G.    The First Prehearing Conference.**

27. The OAH held the prehearing conference as scheduled on July 8, 2022 and heard argument regarding the District's second motion to continue/dismiss. On July 12, 2022, Administrative Law Judge Cynthia Fritz issued her order following the prehearing conference denying the District's Motion to Continue, or in the Alternative, to Dismiss the due process hearing.[12] In that order, ALJ Fritz stated:

> "The current matter before OAH involves the time beginning at the start of the 2020-2021 school year through the time of filing on April 19, 2022. Palos Verdes conceded at the PHC that Father was an educational rights holder of Student during the entire time period at issue in this case. The undersigned is unpersuaded that a change in Father's educational rights holder status after the fact in May 2022 or possibly at the July 18, 2022 custody hearing, has any relevance as to his ability to bring forth this complaint during the time in question or would have any effect on this matter. While Palos Verdes argues that

---

[8] *See* Exhibit E.
[9] Attached as Exhibit F.
[10] Attached as Exhibit G.
[11] Attached as Exhibit H.
[12] Attached as Exhibit I.



APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

Father cannot request prospective remedies for summer 2022 and beyond because he is currently not an educational rights holder of Student, Palos Verdes Peninsula provided no authority for this assertion that future remedies for Student, not Father, could not be ordered for violations that occurred while Father had standing to sue on behalf of Student.

If Palos Verdes' argument holds true, any parent who loses educational rights holder status would be unable to request prospective relief for violations that occurred when the parent was an educational right's holder. This argument would cut off a student's ability to receive prospective relief with a change in the educational rights holder status while the IDEA and California law allow two years from the date the party initiating the request for due process knew or had reason to know of the facts underlying the basis for the request. (20 U.S.C. § 1415(f)(3)(C); Ed. Code, § 56505, subd. (l); Avila v. Spokane School District 91, 852 F. 3d 936, 945) Essentially, the desired result argued by Palos Verdes Peninsula allows for no prospective relief for a student by the former educational right's holder allow the person in within the statute of limitations to sue. This does not appear to be contemplated by the IDEA or California law and no supporting statute or case law was provided in support of Palos Verdes Peninsula's proposition.

Further, Father is well within his rights to file a due process complaint on behalf of Student without other educational right's' holders, as he has independent enforceable rights under the IDEA to challenge a school district's FAPE provisions. (*Winkelman v. Parma City Sch. Dist*. (2007) 550 U.S. 516, 533 (127 S. Ct. 1994.)"[13]

ALJ Fritz also ordered the due process trial to proceed on July 19, 2022.

### H.    The District's Third Motion.

28.    After Plaintiff fully prepared to begin his due process trial, the District filed yet a third motion. This time, the District's motion was entitled "Motion to Dismiss For Lack of Standing; Or In the Alternative Limit Issues AND/OR Remedies and Motion to Continue."[14] The District served this third motion at 5:37 p.m. on July 18, 222, the night before trial was set to begin. The District claimed in its motion that Plaintiff no longer had standing to pursue his Due Process Complaint because the family law judge had issued a minute order that day after a custody hearing

---

[13] *See* Exhibit I.
[14] Attached as Exhibit J.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

affirming Plaintiff and Ms. Webster retained joint legal custody of Z.L. and her sister, but granting Ms. Webster "tie-breaking authority" with respect to educational decisions.

## I. The July 19, 2022 Hearing.

29. On July 19, 2022, Plaintiff expected to begin the due process trial. A new judge had been assigned to hear the matter. Plaintiff argued that Judge Fritz had already ruled on the motion to dismiss and the case should proceed. Administrative Law Judge Cole Dalton ruled that the trial would be continued, yet again, to August 9, 10, and 11 2022, and gave the parties time to file supplemental briefing. Counsel for the District informed ALJ Dalton that she had a superior court trial set to begin the following week in August and that the District's Director of Special Education was not available August 5–15, 2022. Judge Dalton asked the District to see if they could find another representative and indicated that she would begin trial with Plaintiff's witnesses and then continue the trial during the District's counsel's unavailability for several weeks and then finish with the District's presentation of their case after the District's counsel concluded with her superior court trial. Judge Dalton also indicated that she would allow the parties time to file written closing briefs. Plaintiff was devastated as it appeared it would now take until the end of 2022 to resolve the issues presented in his Due Process Complaint.

## J. Plaintiff is Forced to Prepare Additional Opposition Papers and Agree to Continue the Proceedings.

30. On August 3, 2022, the District filed its Supplemental Brief in Support of its Motion to Dismiss for Lack of Standing or in the Alternative Limit Issues and/or Remedies.[15] Plaintiff filed his Opposition to Motion to Dismiss for Lack of Standing and Declaration of Allison Hyatt in support thereof.[16] At that time, Plaintiff was informed that his expert witnesses would not be available for the August hearing

---

[15] Attached as Exhibit K.
[16] Attached as Exhibit L.

dates ordered by the OAH. Therefore, On August 5, 2022, Plaintiff had no choice but to agree to continue the August hearing dates. The parties then filed a Joint Motion to Continue in order to ensure expert witness availability and availability of the District's witnesses at the due process hearing.[17]

31.    On August 8, 2022, the OAH granted the Request for Continuance, setting a new prehearing conference to be held on September 2, 2022 and resetting the due process hearing to start September 13, 2022.[18]

32.    On August 30, 2022, both Parties filed supplemental declarations in support of their position on the District's motion to dismiss.[19]

**K.    The Second Prehearing Conference.**

33.    On September 2, 2022, the second prehearing conference took place. On September 7, 2022, the OAH issued the Order after Prehearing Conference stating that no prehearing motions were pending or contemplated, apart from a potential motion for reconsideration regarding OAH's denial of the District's motion to dismiss.[20]

34.    On September 9, 2022, the OAH issued its order denying the District's third motion to dismiss, stating that each parent has the right to file a due process complaint and that the remedies are determined only after a hearing on the merits and cannot be limited prematurely under the facts provided by the District.[21]    In her decision ALJ Dalton reasoned:

> "In the present matter, parents hold joint legal custody with educational decision-making rights. Accordingly, both Parents retain the right to file a request for due process hearing regarding any matter relating to the identification, evaluation, or educational placement of Student, or the provision of a free appropriate public education to Student. Palos Verdes Peninsula cites no case law supporting the proposition that a parent with joint legal custody can be denied the statutory right to file a

---

[17] Attached as Exhibit M.
[18] Attached as Exhibit N.
[19] Attached as Exhibits O and P.
[20] Attached as Exhibit Q.
[21] Attached as Exhibit R.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

request for due process hearing simply because another parent has general tie-breaking authority. . . . On July 18, 2022, the Superior Court held an evidentiary hearing and ordered joint legal custody with tie breaking authority to Mother. The minute order does not grant Mother authority to override Father's right to file a due process complaint. . . . Nothing in the IDEA or State special education law requires both parents to agree that a due process hearing be filed or even that an IEP be implemented. . . . Each parent has an independent enforceable right to bring a complaint under the IDEA to challenge a school district's provision of FAPE to a student. (Winkleman v Parma City School Dist. (2007) 550 U.S. 516, 533, 127 S.Ct. 1994; see also Blanchard v Morton School Dist. (9th Cir. 2007) 509 F.3d 934, 936.) Palos Verdes Peninsula urges a reading of the joint legal custody order as denying Father rights to file a due process complaint, not always, but only when Mother does not agree that a complaint should be filed. Under this interpretation, Mother has the right to take away statutory rights afforded to Father under the IDEA and state special education law. But the joint custody order contains no such provision. Likewise, Palos Verdes Peninsula cites no legal authority supporting such a proposition. . . . Palos Verdes Peninsula cited no legal authority supporting the proposition that Father, an educational rights holder, can be precluded from filing a request for due process hearing in this matter."[22]

**L. Settlement of the OAH Matter.**

35. After the due process trial was continued a second time on July 19, 2022, Plaintiff became increasingly concerned that Z.L. would move well into her 8th grade year before any type of appropriate supports or compensatory education would be provided to help bridge the widening gap in her reading and writing abilities as compared to her same-aged peers. On September 13, 2022, Plaintiff reached a settlement agreement with the District that Ms. Webster would also agree to that provided a compensatory education fund for Z.L. to receive "privately provided Orton-Gillingham based Structured Literacy tutoring provided by a certified professional to remediate [Z.L.'s] dyslexia" (the "Settlement Agreement"). The Settlement Agreement also specified:

///

///

---

[22] *See* Exhibit R.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

"The District agrees to amend the services page in Student's March 10, 2022 IEP, as amended on April 26, 2022 to reflect the following:

i: Specialized Academic Instruction – Comments: RSP Support Class –

35 minutes of [Z.L.'s] daily SAI time will consist of reading intervention using a Structured Literacy program to remediate [Z.L.'s] dyslexia and work on her IEP reading goals in a small group setting." [23]

With respect to attorney's fees, the Settlement Agreement stated:

"The District agrees to pay reasonable attorney's fees to MEDINA MCKELVEY CLIENT TRUST ACCOUNT within 45-business days of complete execution of this Agreement and presentation to the District of an itemized billing statement showing reasonable attorney's fees related to OAH Case No. 2022040586. If the District and Mr. Lawrence are unable to reach an agreement regarding attorney's fees, the District acknowledges that Mr. Lawrence shall retain the right to bring a motion for attorney's fees. This Agreement does not waive the rights of the Parties to dispute whether the fees claimed are reasonable."[24]

The District then filed a notice of settlement and request to vacate all hearing dates on calendar pending review of the Settlement Agreement at the District's board meeting on September 28, 2022.

**M.** **The District's Refusal to Negotiate Reasonable Attorney's Fees.**

36.     After the Settlement Agreement papers were signed, the District basically refused to negotiate reasonable attorney's fees with Plaintiff per the agreement.

37.     On September 22, 2022, itemized billing statements were provided to counsel for the District, Kristin Myers for both Z.L.'s OAH case and her sister's ("A.L.") OAH case that had also been settled.[25]   After receiving no response from Ms. Myers for almost two weeks, counsel for Plaintiff, Allison Hyatt, emailed Ms.

///

---

[23] *See* Exhibit B.
[24] *Id.*
[25] Attached as Exhibit S.

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

Myers on October 5, 2022 asking for an update.[26] Ms. Myers responded on October 8, 2022: "I am sorry for the delay, but I am going into week 3 of trial. I have prepared the settlement agreements and will get back to you early next week with the District's response."[27]

38. On October 11, 2022, Ms. Hyatt emailed Ms. Myers asking: "Is the Board considering the attorney's fee amounts we requested during tomorrow night's board meeting?"[28] Ms. Myers responded that day saying: "No, the board only considered the agreements we reached, not including fees. If we are able reach an agreement on fees, those amounts will be submitted to the board in separate settlement agreements. I should have authorization to send the District's proposed agreements on fees to you tomorrow."[29] In response, Ms. Hyatt stated in an email that afternoon: "Okay yes, I need to know by tomorrow because if it is not for the full amount requested, my client wants to move forward with a motion for attorney's fees ASAP."[30] Ms. Myers responded again on October 11, 2022 asking: "So your position is that you won't negotiate on fees?" Ms. Hyatt replied within minutes: "I can try, but my client is pretty adamant and will not be happy with a lot of back and forth. I am confident the District Court will not look favorably on the District's repeated efforts to dismiss both cases despite clear controlling federal law."[31]

39. After receiving no response from Ms. Myers, an email was sent on October 13, 2022 from Ms. Hyatt asking for an update.[32] On October 14, 2022, Ms. Myers responded: "I will have a response for you this afternoon."[33] After no response was received, Ms. Hyatt emailed Ms. Myers on October 18, 2022 and again

///

---

[26] Attached as Exhibit T, all email correspondence regarding attorneys' fees after signed Settlement Agreement between October 5, 2022 and October 19, 2022.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD



on October 19, 2022 asking for an update.[34]  Ms. Myers remained silent.  On October 24, 2022, Ms. Hyatt emailed Ms. Myers, once again, stating:

> "I have sent you two emails last week asking about the District's response to the Lawrence's fee requests and have received no response to my emails whatsoever.  If there has been some kind of hardship in your life that has caused you to not respond to my emails, please let me know.  The last email I received from you was 10 days ago on October 14, 2022 stating that you would have a response for me that afternoon.  Again, ten days have now passed.  If the District does not intend to follow through with its agreement pursuant to the parties' settlement contracts to pay reasonable attorney's fees incurred by the Lawrences for each matter, we will consider the agreements to have been breached by the District."[35]

40.     Ms. Myers responded on October 24, 2022 saying:

> "I have been in trial since September 26th, that matter finally concluded on Friday.
>
> Regarding the fees, the District is prepared to negotiate reasonable attorney's fees, but you also indicated that your client was not willing to negotiate and was only willing to settle for the full amount.  Now that I am not in trial I can get you settlement agreements for your consideration with your client."[36]

In response to Ms. Myers October 24, 2022 email, Ms. Hyatt explained:

> "On Tuesday, October 11, you stated in an email at 12:35 pm: 'So your position is that you won't negotiate on fees?'  At 12:59 pm on Tuesday, October 11, I responded: 'I can try, but my client is pretty adamant and will not be happy with a lot of back and forth.'  On October 13 at 2:24 pm, I emailed you again, stating: 'Hi Kristin – I need an update.'  On October 14 at 9:44 am you responded: 'I will have a response for you this afternoon.'  I did not receive any type of response as you promised on October 14th.
>
> We have provided invoices of reasonable fees incurred in response to the District's actions in both proceedings.  If the District contends the fees are not reasonable, please explain why and provide the District's proposal for reasonable fees in each matter so I can take that back to my client for consideration."[37]

---

[34] *See* Exhibit T.
[35] Attached as Exhibit U, all email correspondence regarding attorneys' fees after signed Settlement Agreement between October 24, 2022 and October 27, 2022.
[36] *Id.*
[37] *Id.*

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

41.  On October 27, 2022, Ms. Myers responded: "I am working with the District regarding the rationale for fees and proposed agreements.  I will have them for you by the end of the day tomorrow."[38]  Once again, October 28th came and went without any proposed agreements or response from Ms. Myers whatsoever.  By the end of October 2022, Plaintiff still had no response from the District regarding the fees he requested.

42.  After almost 2 weeks of no communication from Ms. Myers, Ms. Hyatt emailed on November 9, 2022 asking: "Was the board meeting last night?  Do you have an update?"[39]  Ms. Myers responded later that morning: "The Board meeting is tonight.  I will have an update for you later tonight or tomorrow morning."[40]  At 4:35 pm on November 10, 2022, Ms. Hyatt emailed Ms. Myers asking for an update regarding the attorney fee request.[41]

43.  On November 11, 2022, Ms. Myers responded: "The Board has authorized settlement discussions to attempt to resolve the attorney's fees for both [A.L.] and [Z.L.] However, they would like to start with [A.L.'s] case first and then negotiate [Z.L.] . . . ."[42]  Ms. Hyatt responded to Ms. Myers on November 15, 2022 stating: "My client is very upset with the Board attempting to negotiate one [at] a time.  I need an offer for [Z.L.] also or I am going to have to move forward with the fee motion."[43]  It is important to note that a settlement agreement was reached in Z.L.'s younger sister's case *after* the agreement was reached in Z.L.'s case.  The fees requested for A.L.'s case were considerably lower than those requested for Z.L. There were not as many motions and hearings in A.L.'s case.

///

---

[38] *See* Exhibit U.
[39] *See* Exhibit V, all email correspondence regarding attorneys' fees after signed Settlement Agreement on November 9, 2022.
[40] *Id.*
[41]*See* Exhibit W, all email correspondence regarding attorneys' fees after signed Settlement Agreement on November 10–15, 2022.
[42] *Id.*
[43]*Id.*

44.     After no response was received from the District, Ms. Hyatt emailed Ms. Myers on November 18, 2022 informing her that Plaintiff believed the District had breached the settlement agreement by not paying reasonable attorney's fees within 45 business days of the settlement agreement being executed and the presentation of itemized an itemized billing statement.  Ms. Hyatt also reminded Ms. Myers: "we have yet to receive any response from the District regarding the invoices submitted for [Z.L.].  It appears the District is not acting in good faith."[44]  On November 22, 2022, Ms. Myers responded: "As we discussed any agreement on fees needs to be authorized by the Board.  Their request was to negotiate [A.L.'s] case first and then [Z.L.]. I shared that your client disagreed with that approach, but I have not received authority to make an offer on [Z.L.'s] case . . . At this point we still have a dispute regarding reasonable fees."[45]

45.     On December 15, 2022, Ms. Hyatt emailed Ms. Myers once again inquiring about the District's response to Plaintiff's request for attorney's fees.[46] After no response was received from Ms. Myers in December of 2022, Ms. Hyatt emailed Ms. Myers again on January 7, 2023 asking: "Do you have any response to my email below from December 15th?  Is the District refusing to agree to the fees requested by [Plaintiff]?"[47]

46.     On January 19, 2023 Ms. Myers replied: "The District is not refusing to pay reasonable attorney's fees, however, you have indicated that your client is not willing to negotiate and so we still have a dispute about what fees are reasonable . . . Is your client willing to participate in settlement discussions or are they only willing to accept the full amount of fees."[48]

///

---

[44] *See* Exhibit X, all email correspondence regarding attorneys' fees after signed Settlement Agreement on November 18–February 27, 2022.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD

47.     On January 25, 2023, Ms. Hyatt emailed Ms. Myers:

> "I am requesting a response regarding the [$$] demand for attorney's fees for [A.L.'s] case that I sent to you on January 19, 2023.  I followed-up again with you yesterday and have received no response acknowledging receipt of the demand.
>
> Also, it has now been more than four months since the settlements were reached in both cases and documentation regarding the requests for reasonable attorney's fees by [Plaintiff] was provided to the District for both [A.L.] and [Z.L.], yet I still have not received any response whatsoever to our demand for fees for [Z.L.'s] case.  There was never an agreement between the parties to negotiate the fee requests one at a time and the District's decision to not engage at all for four months regarding the request for fees regarding [Z.L.'s] case is a clear bad faith breach of the settlement agreement."[49]

48.     On January 26, 2023, Ms. Myers responded:

> "I forwarded your counter-offer of [$$ for A.L.'s case] to the District. I will get back to you by tomorrow. . . As for [Z.L.'s] case, the District has remained willing to engage in settlement discussions.  However, those discussions stopped because you informed me that your client was not willing to negotiate and would only settle if the District was willing to agree to the total amount of your invoice. If your position has changed, please let me know."[50]

49.     Ms. Hyatt responded to Ms. Myers in an email on January 26, 2023 stating:

> "The District has never engaged in settlement discussions regarding [Z.L.'s] case.  The only specific communication we have received in response to the invoice sent to you back in September of 2022 in the amount of $55,855.00 for [Z.L.'s] case was that the District wanted to wait on negotiating the fees for [Z.L.'s] case until after [A.L.'s] fees were resolved.  You never even confirmed the District would not pay the full amount of the invoice.  It has just been no response.  I emailed you on December 15, 2022 asking if the District is refusing to agree to the fees requested.  I followed up again with you on January 7, 2023, and finally on January 19, 2023 you replied and we still have no specific answer, nor have you proposed a counteroffer that I can take back to my client.  If you have

---

[49] *See* Exhibit X.
[50] *Id.*

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD



a counteroffer from the District regarding [Z.L.'s] fees, I will take that back to my client for consideration."[51]

50. Ms. Myers responded via email on January 31, 2023:

"We have not been able to negotiate on Z.L.'s case because you indicated that your client was not willing to accept anything less than the full invoice and you would be filing your fee motion.

In any event, the District is still very much interested in trying to resolve these matters without the need for further litigation. The next board meeting is scheduled for the evening of February 8th, where I can discuss this matter and request settlement authority. Please note that this is a substantially new Board since the last time we discussed this case, so I do think it would be productive to bring these matters to them again."

51. On Thursday February 2, 2023, Ms. Hyatt emailed Ms. Myers clarifying Plaintiff's position:

"As I indicated before, my client will consider any good faith settlement offer that takes into account the number of times the District attempted to dismiss [Z.L.'s] case, the multiple motions for continuance, and the fact that the parties prepared for trial and on the day trial was set to start, the District requested another continuance. The District has provided no rationale for a reduction in the fees requested, nor has the District unequivocally stated it will NOT pay the fees requested. A specific response in this regard was requested on December 15, 2022 and again on January 7, 2023. In your email below, you state that you can request settlement authority on February 8th. It seems that you would already have settlement authority if the District intended to negotiate the fee request in good faith. If you believe you will be able to have a fruitful conversation with the Board during the meeting on February 8, 2023, please provide a specific response to our settlement demand for [Z.L.'s] case by no later than 12 p.m. on February 9, 2023.

You also stated that you [would] get back to me regarding the [$$] settlement demand for [A.L.]'s case by last Friday. Do you have a response?"[52]

52. In an email received from Ms. Myers on February 9, 2022 regarding fees she claimed: "The Board met last night and requested additional time to discuss.

---

[51] *See* Exhibit X.
[52] *Id.*

APP & COMPLAINT FOR ATTORNEYS' FEES & COSTS PURSUANT TO 20 U.S.C. 1415
CASE NO.: TBD



Both matters have been placed on the agenda for the next meeting on February 22, 2023. I will provide an update after that meeting."[53] On February 23rd Ms. Hyatt emailed Ms. Myers asking: "What is the update after the meeting last night?"[54] No response from Ms. Myers was received so Ms. Hyatt emailed Ms. Myers again on Friday, February 24, 2023:

> "In your email below from February 9th you stated that both matters were on the agenda to be discussed at the meeting on February 22nd and that you would provide an update after the meeting. I inquired about an update yesterday and have yet to receive a response from you. Please provide an update."[55]

53. Consistent with the same pattern of dilatory tactics, Ms. Myers responded on February 27, 2023 in an email: "I am sorry for the delay, I don't have any settlement authority yet. The Board requested one more meeting to finalize."[56] The District's Board met again on March 8, 2023 according to the District's published calendar on its website. Ms. Myers provided no update to Plaintiff following the March 8, 2023 Board meeting. At this point, Plaintiff has no reason to believe the District will ever engage in good faith to pay the reasonable attorney's fees requested by Plaintiff.

## **CLAIM FOR RELIEF**

1. Plaintiff files this complaint with the attached notice of motion, motion for attorneys' fees and costs, memorandum of points and authorities, supporting declarations and evidence pursuant to 20 U.S.C. § 1415 because Plaintiff was the prevailing party in connection with a due process proceeding, OAH Case No. 2022040586.

2. The Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(3)(B).

///

---

[53] *See* Exhibit X.
[54] *Id.*
[55] *Id.*
[56] *Id.*



3.     Plaintiff prays for the relief outlined in the accompanying motion for an award of reasonable attorneys' fees in the amount of $86,094.90 plus any fees incurred further litigating this matter plus interest.

## **PRAYER**

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.     For an award of attorney's fees in the amount of $86,094.90 for fees incurred up to the filing of this Complaint and the accompanying Motion.

2.     For additional fees incurred preparing a reply brief and further litigating this matter according to proof.

3.     For interest accrued since September 22, 2022.

4.     For costs of suit.

5.     For any other and further relief as the Court deems just and proper.


Dated:  March 22, 2023                          MEDINA McKELVEY LLP

                                                By: /s/ *Allison S. Hyatt*
                                                    ALLISON S. HYATT
                                                    Attorneys for Plaintiff Ryan Lawrence
                                                    on behalf of Z.L.

